ALPHA PORTLAND CEMENT COMPANY *vs.* COMMONWEALTH.

Suffolk.   November 21, 1923. — February 28, 1924.

Present: RUGG, C.J., BRALEY, PIERCE, & CARROLL, JJ.

*Tax,* Excise on foreign corporation, Abatement. *Interstate Commerce. Corporation,* Taxation. *Constitutional Law,* Taxation. *Commissioner of Corporations and Taxation.*

In a petition by a corporation under G. L. c. 63, § 77, to recover an excise alleged to have been exacted illegally, the petitioner cannot cause inquiry to be made as to whether there has been an overvaluation of that which is rightly subject to the tax, relief for wrong of that nature being afforded by proceedings under G. L. c. 63, §§ 51, 71.

The express terms of G. L. c. 63, §§ 30–43, 52, and St. 1921, c. 361, relating to an excise upon a foreign corporation, confine the operations and effect of the statutes to property located and net income earned within the Commonwealth.

Upon facts agreed to at the hearing of a petition by a foreign corporation under G. L. c. 63, § 77, for the recovery of an excise alleged to have been exacted from the petitioner illegally, it appeared that the assessment of the tax was made in accordance with a stated ruling of the commissioner of corporations adopted under the provisions of G. L. c. 63, § 47, and that the petitioner filed its return and made no request for a determination of the tax by any other method. The return by the petitioner and the method of computation by the commissioner were set out in the agreed statement of facts in detail, and this court, having held that the question, whether there had been an overvaluation of that which was rightly the subject of the excise, was not raised in this proceeding, *stated,* that, without reviewing the details of the method of computation, it was enough to say that it was in conformity with the statute.

In computing an excise of the character above described, credits due from residents within this Commonwealth to the foreign corporation may be used as a measure of the excise although they came into existence through the transaction of interstate commerce.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on July 11, 1923, to recover an excise alleged to have been exacted from the petitioner illegally for the year 1922.

The facts were agreed upon. Among the facts so agreed upon were the following:

" The only tangible property owned by petitioner in the Commonwealth of Massachusetts, real or personal, is the office furniture in the sales office, valued at about $500. Of the intangible assets there are none having a situs in Massachusetts for purposes of property taxation except in so far as the corporate franchise employed within the boundaries of the Commonwealth in transactions in interstate commerce as herein set forth and credits arising from the sale of cement to residents of Massachusetts may be considered as having such situs. No bank account is kept in Massachusetts. The salesmen's salaries and office rent are sent directly from the principal office at Easton, Pennsylvania. Incidental expenses in Massachusetts are paid from an account kept by the district sales manager in his own name, which does not exceed $1,000. Stockholders', directors' or other corporate meetings have never been held in Massachusetts, and no officer or agent of petitioner has an office there except the district sales manager's office, above specified. No books or records are kept in Massachusetts except as above noted."

" The petitioner filed its return unaccompanied by any request for a determination by any other than the method set forth in ruling No. 2,505, nor was any such request thereafter submitted to the commissioner, either prior to or after assessment of the excise.

" Pursuant to ruling No. 2,505 and the provisions of G. L. c. 63, and upon the basis of the information furnished by said return, the commissioner determined the value of the corporate excess of the petitioner employed within the Commonwealth in the following manner, to wit:

" The portion of the remainder of income allocable to Massachusetts under the provisions of G. L. c. 63, § 41, (St. 1919, c. 355, § 19) was shown by said return to amount to $9,202.53 (Schedule D, item 15). The total of said remainder was shown by said return to amount to $707,577.98 (Schedule D, items 5 and 10). The intangible assets employed in business were shown to consist of the following items (Schedule C, Table A):

| | |
|---|---|
| Bank deposits and accounts receivable | $827,469 98 |
| Good will . . . . . . . . . . . . . | 1,750,000 00 |
| Other intangible assets . . . . . . . . . | 5,084,620 23 |
| Total . . . . . . . . . . . . . . . | $7,662,090 21 |

" Using these figures for the purpose of determining the proportion in accordance with said ruling No. 2505, but inadvertently taking the figures $7,602,090.21, instead of $7,662,090.21, as the figure representing the total of intangible assets, the commissioner, by the following computation, to wit: $\dfrac{9,203}{707,578} \times 7,602,090.21 = 98,827.17$, determined $98,827.17 to be the value of the intangible assets employed in business within the Commonwealth. Adding to this figure the value of the tangible assets employed in business in Massachusetts, shown by said return to amount to $573.00 (Schedule C, Table A), the commissioner determined the total value of all assets of the petitioner employed in business in Massachusetts to be $99,400.00.

" Pursuant to the provisions of G. L. c. 63, § 30, par. 4, the commissioner determined the fair cash value of all the shares constituting capital stock on April 1, 1922, to be $16,352,162.00. He determined the value of the total assets of the corporation to be $21,406,098.00, as shown by said return (Schedule C, Table IV). The commissioner then, having found that the value of the assets employed in business within the Commonwealth was $99,400.00, as herein above stated, determined the value of the corporate excess employed within the Commonwealth, according to the rule provided by G. L. c. 63, § 30, par. 4, to be $75,932.08, the computation being as follows, to wit:

$$\dfrac{99,400}{21,406,098} \times 16,352,162 = \$75,932.08.$$

" The amount of the tax on said corporate excess, at the rate of $5.00 per thousand, the commissioner determined to be $379.66.

" In accordance with the provisions of G. L. c. 63, and acts

in amendment thereof and in addition thereto, the Commissioner determined the amount of the tax on net income derived from business carried on within the Commonwealth to be $187.91, making the total excise $567.57, as herein above stated."

Other material facts are described in the opinion. The suit was heard by *Crosby*, J., by whose order there was entered a decree dismissing the petition. The petitioner appealed.

The case was submitted on briefs.

*J. G. Palfrey, L. H. Porter & H. Twombly*, for the petitioner.

*J. R. Benton*, Attorney General, & *A. Lincoln*, Assistant Attorney General, for the Commonwealth.

RUGG, C.J. This is a petition under G. L. c. 63, § 77, to recover an excise alleged to have been exacted from the petitioner illegally for the year 1922. This section of the statute enables a corporation to bring before this court the inquiry whether there has been a wrongful assessment of a tax or excise upon that which was not the proper subject of taxation. A corporation cannot by petition under this section cause inquiry to be made whether there has been an overvaluation of that which is rightly subject to the tax or excise, relief for wrong of that nature being afforded by G. L. c. 63, §§ 51, 71. *Boston Manuf. Co.* v. *Commonwealth*, 144 Mass. 598. *Attorney General* v. *East Boston Co.* 222 Mass. 450.

The petitioner is a corporation organized under the laws of New Jersey, engaged in business in this Commonwealth. Its only tangible property within this Commonwealth is office furniture of a value of $573. It conducts within this Commonwealth, in the sale and delivery of cement and the maintenance of a sales force, an extensive business exclusively interstate in character. Its nature and extent are described in *Alpha Portland Cement Co.* v. *Commonwealth*, 244 Mass. 530, in substantially the same general terms as shown on this record and need not now be repeated.

The excise here assailed was levied under the provisions of G. L. c. 63, §§ 30–43, both inclusive, § 52, and St. 1921,

c. 361. All these sections are printed in 244 Mass. 532–543, and need not here be recited. It is provided by G. L. c. 63, § 47, that the commissioner of corporations and taxation " shall make from time to time such reasonable rules and regulations, consistent with sections thirty to fifty-one, inclusive, as he may deem necessary for carrying out their provisions." Pursuant to that mandate the commissioner made a general ruling of the following tenor: " 2505. Ordinarily, such proportion of an intangible asset employed in business will be deemed to be employed in business within Massachusetts as that portion of the remainder of income allocable in Massachusetts under the provisions of section 19 of the act bears to the total of said remainder. If, however, because of the peculiar circumstances of any particular case such method of apportionment does not fairly reflect the proportion of an asset employed in business in Massachusetts, the corporation may submit its reasons for requesting determination by another method. The department also reserves the right in such cases to make the apportionment by another rule, even though the corporation does not request determination by another method; but in such event the corporation will be notified." The petitioner filed its return and made no request for determination by any other method. So far as this method affects valuation, it is not open to inquiry in this proceeding. The remedy for a wrong of that nature would be under §§ 51, 71.

This statute in its application to the present petitioner was considered at length in *Alpha Portland Cement Co.* v. *Commonwealth*, 244 Mass. 530. The purpose of bringing the present petition respecting the excise levied for the year succeeding that under investigation in the earlier case apparently is to make certain the view of this court as to points thought by the petitioner not to have been fully developed there, in order that the Supreme Court of the United States on writ of review may have before it all aspects of the statute.

The method of calculation of the excise is set out with greater detail in the present than in the earlier record. The basis of the excise is the value of the corporate excess em-

ployed within the Commonwealth and the net income derived from business within the Commonwealth. Thus the express terms of the statute confine its operation and effect to property located and net income earned within the Commonwealth. Without pursuing the details of the method of computation to ascertain these two elements, it is enough to say that it is in conformity to the statute. This conclusion finds confirmation in the fact that the petitioner failed to exercise the option, extended to it by the ruling of the commissioner already quoted, of requesting an apportionment by some other method.

The petitioner founds its objections to the statute on no narrow ground. The only contention now urged by it, stated broadly, is that the tax is illegal and in violation of its rights under the federal Constitution. That contention is understood to mean that, as matter of constitutional right, the only factor capable of being used to ascertain the excise due from it is the tangible personal property owned by it and located in this Commonwealth, that is to say, its office furniture worth $573. It is said in the brief of the learned counsel for the petitioner: " In the former case it was stipulated that the amount of the tax assessed was not questioned, and while in the court's opinion reference was made to the petitioner's intangible assets, the extent to which the valuation of corporate excess consisted of a valuation of these intangible assets arising solely from the conduct of interstate commerce did not appear. If in the former case the court intended to construe the statute as including as assets employed in business within the Commonwealth these intangibles constituting a part of and arising exclusively from the conduct of interstate commerce, why that is of course the end of this case."

The former decision rested in its ultimate analysis upon the theory that under the statute the excise might be measured in part upon intangible assets of the petitioner having a situs in this Commonwealth and arising exclusively from the conduct of its interstate business. We understand that credits due from residents within this Commonwealth to nonresidents may be made the subject of direct property

taxation here. *Metropolitan Life Ins. Co. of New York* v. *New Orleans,* 205 U. S. 395. *Liverpool & London & Globe Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346. *State Board of Assessors* v. *Comptoir National D'Escompte,* 191 U. S. 388. *Shaffer* v. *Carter,* 252 U. S. 37, and cases there reviewed. The source from which such credits arise is not material. They are not immune from taxation because coming into existence through the transaction of interstate commerce. That being so, it would seem that such credits may be used as a measure of an excise levied indifferently upon all corporations under a general law.

The case at bar appears to us to be governed in every essential particular by the authority of *Alpha Portland Cement Co.* v. *Commonwealth,* 244 Mass. 530, and the decisions there collected and reviewed. Its reasoning is adopted without discussion as decisive of the case at bar.

*Petition dismissed with costs.*